```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| DAVID LANG-CORREA,<br><br>**Plaintiff**,<br><br>v.<br><br>WILMA DIAZ-CARLO, <u>et al.</u>,<br><br>**Defendants**. | **CIVIL NO**. 09-1247 (FAB) |

**OPINION & ORDER**

BESOSA, District Judge

Pending before the Court is plaintiff's motion for default judgment against two defendants.  (Docket No. 11)  Having considered the arguments contained in plaintiff's motion and heard testimony at the default hearing held on November 9, 2009, the Court **GRANTS IN PART AND DENIES IN PART** the motion for default judgment.

**DISCUSSION**

I.   Background

   **Procedural Background**

On March 12, 2009, plaintiff David Lang-Correa ("Lang" or "plaintiff") filed a complaint against Grupo Editorial Nueva America, Inc. ("Grupo Editorial") and Wilma Diaz-Carlo ("Diaz")

(collectively "defendants")[1] alleging a copyright infringement claim pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101-1332. (Docket No. 1 at ¶¶ 1-4)[2]  On September 16, 2009, the Clerk entered default against Grupo Editorial and Diaz.  (Docket No. 10)  On October 9, 2009, plaintiff filed a motion for default judgment against both Diaz and Grupo Editorial.  (Docket No. 11)  A hearing was held on November 9, 2009, to establish damages and support the facts alleged in the complaint.  (See Docket No. 18)

**Factual Background**

The following factual findings are derived from testimony and evidence presented at the November 9, 2009, hearing:

---

[1] The complaint also includes an anonymous defendant, John Doe, alleged to be Diaz's spouse. (Docket No. 1 at ¶ 5)  There is no indication in the record, however, that this defendant was ever identified, named, or served.  Because it has been well over 120 days since the filing of the complaint, any claims against this anonymous defendant are **DISMISSED WITHOUT PREJUDICE**. See Fed.R.Civ.P. 4(m); (Docket No. 1)

[2] Plaintiff also refers to related claims under Puerto Rico law in the first paragraph of the complaint.  These claims are not fleshed out later in the complaint and the remaining allegations concern only the copyright infringement claim. (See Docket No. 1) Title 17, United States Code, Section 301(a) "preempts any state cause of action which is equivalent to a federal copyright claim." Amador v. McDonald's Corp., 601 F.Supp. 2d 403, 408 (D.P.R. 2009) (citing Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1st Cir. 1994)).  Because the complaint does not contain allegations other than those supporting plaintiff's copyright infringement claim under federal law, any state law claims contained in the complaint are preempted.  See id. Therefore, the related state law claims referred to in the first paragraph of the complaint are **DISMISSED WITH PREJUDICE.**

Civil No. 09-1247 (FAB)                                                      3

    Plaintiff was born on August 8, 1959, and resides in Guaynabo, Puerto Rico. He works as a makeup artist, but also spends a significant amount of his time as a "paso fino" competition judge. The term "paso fino" refers to a particular breed of horse raised in Puerto Rico and other parts of Latin America. Lang spent a period of ten years gathering historical documents and photographs related to the "paso fino" horse. The product of that research is a book entitled *Memorias del Paso Fino: El Caballo de Puerto Rico* ("*Memorias del Paso Fino*"). *Memorias del Paso Fino* includes photographs from different parts of Latin America and Lang's personal collection. Lang holds both federal and Puerto Rico certificates of registration establishing his intellectual property rights with regard to this literary work. (Docket No. 20-2; Plaintiff's Exhibit 2)

    Lang met Diaz while working as a makeup artist at a photo shoot for *Belleza y Salud* magazine, where Diaz worked as an editor. After working with Diaz on this occasion, Lang offered her $2,000 to edit and correct the final manuscript of *Memorias del Paso Fino*. Diaz accepted, and Lang delivered to her the original manuscript and all original photos that had been compiled for the book. Diaz told Lang that she could use her professional connections with publishing houses to secure the publication of *Memorias del Paso Fino*. Diaz has not returned the original materials for *Memorias del Paso Fino* to Lang.

Civil No. 09-1247 (FAB)                                                                                           4

    In August of 2008, *Memorias del Paso Fino* was published without Lang's involvement by Grupo Editorial, a corporation formed and controlled by Diaz. Approximately 1,100 copies of the book were printed by a publishing house in Colombia, with about 340 copies delivered to defendants. The remaining copies are currently held by the publishing house in Colombia. Lang estimates that defendants have sold approximately 200 copies of *Memorias del Paso Fino* through various bookstores in Puerto Rico at a price of $125 per book. Lang has received no royalties from the sale of *Memorias del Paso Fino* and has made no agreement with Diaz regarding the sale, marketing, or distribution of the book. Apparently, Diaz did not pay the publishing house in Colombia for printing copies of Memorias del Paso Fino; Lang was later billed for those services.

    Although Lang owns the intellectual property rights for the book, defendants maintained possession of approximately 340 of the 1,100 published copies[3] of *Memorias del Paso Fino*, the original manuscript, and the original photographs included in the book. The rest of the 1,100 copies are still at the publishing house in Colombia. On many occasions, Lang has attempted to contact defendants by telephone and e-mail to request the return of the original manuscript and original photographs, but defendants have not responded to his efforts.

---

[3] Lang estimates that 200 of those 340 copies have been sold.

Lang testified that he expected to receive profits of $100,000 from the sale of *Memorias del Paso Fino*, split evenly between first and second printings sold in Puerto Rico, the Dominican Republic, Aruba, and other countries where "paso fino" breeding and competition is popular.  He claims that defendants' actions have deprived him and will continue to deprive him of opportunities to expand the goodwill of the book.  Lang also testified that his personal reputation has been damaged by defendants' actions.

**II. Legal Analysis**

   **A.   Default Judgment Standard**

Pursuant to Rule 55(b), a plaintiff "must apply to the court for a default judgment" where the amount of damages claimed is not a sum certain. When necessary to effectuate judgment, "the court may conduct hearings or make referrals" for numerous purposes, including "determin[ing] the amount of damages." Fed.R.Civ.P. 55(b).  Entry of default, however, "'constitutes an admission of all facts well-pleaded in the complaint'" and precludes a defaulting defendant from contesting liability. See Benitez-Ruiz v. Hospital Buen Pastor, No. 03-1330, 2009 WL 2151285 at *2 (D.P.R. July 14, 2009) (quoting Metropolitan Life Ins. Co. v. Colon Rivera, 204 F.Supp.2d 273, 274-75 (D.P.R. 2002)); see also In re The Home Restaurants, Inc., 285 F.3d 111, 114 (1st Cir. 2002) ("[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial

Civil No. 09-1247 (FAB)                                              6

process."). The court may, however, "examine a plaintiff's complaint to determine whether it alleges a cause of action." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).

Once default has been entered against a defendant and liability has been established, the only remaining issue for the court is the determination of damages. See id. At this stage, "the trial judge . . . has considerable latitude in determining the amount of damages." See Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993) (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 321 (2d Cir. 1986)).

**B.  Federal Copyright Infringement**

**Liability**

Pursuant to 17 U.S.C. § 501(b), "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." To establish that action, "a party must prove both control of a valid copyright and copying of original elements of the work by the putative infringer." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). To show copying of original elements, a plaintiff must show that defendant actually copied his or her copyrighted material and that "the copying was so egregious

Civil No. 09-1247 (FAB)                                                7

as to render the allegedly infringing and infringed works substantially similar." Id. (citing Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995)).

The court is satisfied that Lang has established the liability of both defendants based on the admitted factual allegations of the complaint and evidence presented at the default hearing. To satisfy the requirement of copyright ownership, the complaint alleges that Lang is the sole author and owner of the copyright of *Memorias del Paso Fino*. (Docket No. 1 at ¶ 7) Furthermore, Lang submitted both federal and Puerto Rico registrations of his copyright ownership with respect to that book. (Docket No. 20-2 at 1; Plaintiff's Exhibit 2)

With regard to the requirement that original elements of *Memorias del Paso Fino* be copied by Diaz and Grupo Editorial, the complaint alleges that Diaz, through Grupo Editorial, published the original manuscript Lang had submitted for editing services and sold copies of the book in Puerto Rico. (Docket No. 1 at ¶¶ 8-11) Lang also testified at the default hearing that defendants ordered the printing of approximately 1,100 copies of the book, received 340 copies, and sold 200 copies of those received. Furthermore, one of these printed copies was introduced into evidence during the default hearing. (Plaintiff's Exhibit 1) The allegations in the complaint and the evidence presented at the default hearing establish that defendants simply published the original manuscript

Civil No. 09-1247 (FAB)                                                 8

of *Memorias del Paso Fino*, thus demonstrating that defendants actually copied Lang's copyrighted material and that the product of that copying was not only substantially similar to the original, but rather, aside from some editing that may have been performed by Diaz, was exactly the same.

**Damages**

When bringing a claim under 17 U.S.C. § 501(b), a plaintiff may prove actual damages or, as in this case, opt for statutory damages.  17 U.S.C. § 504(a).  Pursuant to 17 U.S.C. § 504(c)(1), a plaintiff may recover "statutory damages for all infringements involved in the action, with respect to any one work, . . . in a sum of not less than $750 or more than $30,000 as the court considers just."  Where a plaintiff proves "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

"Courts have wide discretion to set damages within these statutory limits." Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F.Supp. 511, 517 (D.P.R. 1993) (citing Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 3 (1st Cir. 1983); Int'l Korwin Corp. v. Kowalczyk, 855 F.2d 375, 383 (7th Cir. 1988)).  In exercising this discretion, a court should consider the following factors: "(1) the expenses saved and profits reaped by defendants in connection with the infringements; (2) the revenues lost by

plaintiffs as a result of defendants' conduct; and (3) the infringers' state of mind - whether willful, knowing or merely innocent." Id. (citing Nick-O-Val Music Co. v. P.O.S. Radio, Inc., 656 F.Supp. 826, 829 (M.D.Fla. 1987)).

There is not an adequate basis for apportioning damages based on the expenses saved or profits reaped by Diaz and Grupo Editorial. Although Lang estimated that defendants may have sold 200 copies of *Memorias del Paso Fino* at a price of $125 for each book, no other evidence as to profits or costs was presented at the hearing or alleged in the complaint. Therefore, the court must look to Lang's losses rather than any gains made by defendants to determine the proper award of statutory damages.

Defendants have refused to return both the original manuscript of *Memorias del Paso Fino* and the original photographs used in it, thus preventing Lang from publishing and profiting from a book for which he owns the copyright. Lang testified that he expected to make $50,000 from the first printing of *Memorias del Paso Fino*, followed by another $50,000 from a second printing, both of which would have been sold in several Latin American countries. These figures provide the Court with a reasonably certain basis for apportioning damages based on plaintiff's losses in the amount of $100,000.[4]

---

[4] Plaintiff also testified as to damage to his reputation and the goodwill of his literary work, but gave no other information that would be helpful in assessing the value of any reputation or

Civil No. 09-1247 (FAB)                                               10

      Absent any willfulness on the part of defendants, however, the statute does not permit an award of damages higher than $30,000. Although 17 U.S.C. § 504 contains no definition of willfulness, a defendant's knowledge that he or she is infringing plaintiff's copyright or a defendant's reckless disregard of the likelihood of such infringement is sufficient to trigger the increased damages provided by the statute. See Gener-Villar v. Adcom Group, Inc., 560 F.Supp.2d 112, 133 (D.P.R. 2008) (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001); Wildlife Express Corp. v. Carol Wright Sales, 18 F.3d 502, 511-12 (7th Cir. 1994); RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988)); Microsoft Corp. v. PC Express, 183 F.Supp.2d 448, 454 (D.P.R. 2001) (citing Microsoft Corp. v. Software Wholesale Club, Inc., 129 F.Supp.2d 995, 1002 (S.D.Tex. 2000); Wildlife Express Corp., 18 F.3d at 511-12; N.A.S. Import Corp. v. Chenson Enter., Inc., 968 F.2d 250, 252 (2d Cir. 1992).

      Based on the evidence presented at the default hearing, Lang's testimony, and the allegations of the complaint, the Court finds, for the purposes of increasing damages under 17 U.S.C. 504(c)(2), that defendants acted willfully. Lang testified that he never authorized defendants to market, sell, or distribute his book

---

goodwill lost.  Therefore, the Court declines to stray beyond the basis for awarding damages outlined above.

Civil No. 09-1247 (FAB)                                                    11

and that he has never received any royalties or payments with regard to the book's publication.  He also submitted an invoice signed by Diaz describing the extent of her professional services rendered, which were limited to "editing, correcting, and transcribing" Lang's original manuscript.  (See Docket No. 20-2 at 2)  Further, Lang testified that he has attempted to contact defendants regarding the unauthorized publication of *Memorias del Paso Fino* by telephone, e-mail, and through his attorneys, but defendants have never responded to any of these attempts and continued to sell unauthorized copies of *Memorias del Paso Fino*. Even if defendants did not have actual knowledge that plaintiff had a registered copyright for *Memorias del Paso Fino* prior to publishing and selling the book, they acted with reckless disregard because they had no reason to believe they were authorized to publish the book and have made no attempt to secure authorization in the face of Lang's extensive efforts to contact them regarding their infringement of his copyright.  Therefore, Lang has established defendants' wilfulness sufficient to allow the Court to increase the statutory damage award to $100,000.

### Injunctive Relief

A plaintiff is entitled to injunctive relief with respect to a copyright infringement claim where defendant(s) have infringed plaintiff's copyright in the past and future infringements are likely.  Nat'l Council of Exam'rs for Eng'g and Surveying v.

Civil No. 09-1247 (FAB)                                                   12

Cameron-Ortiz, 626 F.Supp.2d 262, 269 (D.P.R. 2009) (citing Venegas Hernandez v. Sony, Civ. No. 01-2187, 2003 WL 1857496 at *4 (D.P.R. Feb. 3, 2003); Walt Disney v. Powell, 897 F.2d 565, 567 (D.C. Cir. 1990)).  In this case, the Court finds that both requirements for injunctive relief are met.  Liability has been established, making it clear that infringement of *Memorias del Paso Fino* by defendants has taken place.  Further, the allegations of the complaint and Lang's testimony indicate that there remains a large inventory of unauthorized copies of *Memorias del Paso Fino* and that some of those copies are still being sold in bookstores in Puerto Rico, creating a high likelihood that Lang's copyright on the book will continue to be infringed in the future.  Therefore, Lang is entitled to injunctive relief to prevent any such future violations.

Having found that Lang is entitled to injunctive relief in the present case, the Court **ORDERS** that defendants, any of their officers, agents, servants, employees, assigns or attorneys, and any other persons who are in active concert or participation with defendants:

1.   are prohibited from directly or indirectly infringing Lang's registered copyright of the literary work, *Memorias del Paso Fino:  El Caballo de Puerto Rico*, such as continuing to market, offer, sell, license, lease, manufacture, or dispose of that literary work;

     2. must deliver to plaintiff Lang all copies of *Memorias del Paso Fino: El Caballo de Puerto Rico* in their possession; and

     3. must deliver to plaintiff Lang the original manuscript of *Memorias del Paso Fino: El Caballo de Puerto Rico* and all original photographs used in the production of that work.

**Attorney's Fees**

     Plaintiff requests an award of costs and attorney's fees in the amount of $10,000. (Docket No. 11 at 2) Title 17, United States Code, Section 505 allows a court to award full costs and reasonable attorney's fees "to the prevailing party" in a copyright infringement action. Plaintiff has not established, however, any basis for the amount of costs or attorney's fees requested. Therefore, the request for an award of costs and attorney's fees is **DENIED WITHOUT PREJUDICE**. Plaintiff is granted until January 4, 2010, to submit a properly supported petition for costs and attorney's fees.

**CONCLUSION**

     For the reasons expressed above, the Court **GRANTS IN PART AND DENIES IN PART** plaintiff's motion for default judgment. (Docket No. 11) The motion for default judgment is **GRANTED** as to defendants' liability and an award of statutory damages for plaintiff in the amount of $100,000. The motion for default

Civil No. 09-1247 (FAB)                                                   14

judgment is **DENIED WITHOUT PREJUDICE** as to plaintiff's request for an award of costs and attorney's fees.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, December 7, 2009.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE